ROBERT W. HIRSH, SBN 102731
ROBERT W. HIRSH & ASSOCIATES
8383 Wilshire Boulevard, Suite 510
Beverly Hills, California 90211
Telephone: 310-275-7800;  Facsimile: 310-275-4050
Email: rhirsh@hirshlaw.com

**Attorneys for Plaintiffs Carmelo Anthony, Melo Enterprises, Inc., and Chosen One Properties, LLC**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMELO ANTHONY; MELO ENTERPRISES, INC.; and CHOSEN ONE PROPERTIES, LLC, | CASE NO. |
| Plaintiffs, | COMPLAINT FOR: |
| v. | 1. CONVERSION<br>2. NEGLIGENCE<br>3. BREACH OF FIDUCIARY DUTY<br>4. B&P 17200, et. seq. |
| LARRY HARMON aka LARRY W. HARMON aka LAWRENCE HARMON; LARRY HARMON & ASSOCIATES, P.A.; HARMON-CASTILLO, LLP; FRANK CASTILLO; KELLY RUNKLE; SORA BARNES; KENNY CRUZ aka KENNETH CRUZ; KC DEVELOPMENT, LLC; VITALIS PARTNERS, LLC; PROFESSIONAL PARTNERS, LLC; and MCG PARTNERS | 5. CONCEALMENT<br>6. INTENTIONAL MISREPRESENTATION<br>7. UNJUST ENRICHMENT<br>8. CONSTRUCTIVE TRUST<br>9. RESULTING TRUST<br>10. WILLFUL MISCONDUCT<br>11. DECLARATORY RELIEF<br>12. ACCOUNTING<br>13. CONVERSION<br>14. B&P 17200, et. seq.<br>15. UNJUST ENRICHMENT |
| Defendants. | DEMAND FOR JURY TRIAL |

1
COMPLAINT

Plaintiffs Carmelo Anthony ("Anthony"), Melo Enterprises, Inc. ("MEI"), and Chosen One Properties, LLC ("COP") (collectively "Plaintiffs") allege:

## I.

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. Section 1332(a)(b). There is complete diversity between all of the Plaintiffs on the one hand, and all defendants on the other. There is more than $75,000.00 in controversy.

2. Venue lies in this district pursuant to 28 U.S.C. Section 1391(a).

## II.

## **THE PARTIES**

3. Anthony is and at all relevant times was an individual and a citizen of Colorado.

4. MEI is and at all relevant times was a duly formed Delaware corporation with its principal place of business located in Colorado.

5. COP is and at all relevant times was a duly formed Delaware limited liability company with its principal place of business located in Colorado.

6. Defendant Larry Harmon aka Larry W. Harmon aka Lawrence Harmon ("LH") is and at all relevant times was an individual residing and doing business in the Eastern District of California.

7. Defendant Larry Harmon & Associates, P.A. ("LH Corp") is and at all relevant times was a duly formed California corporation with its principal place of business located in the Eastern District of California.

8. Defendant Harmon-Castillo, LLP ("Harmon LLP") is and at all relevant times was a duly formed California limited liability partnership with its principal place of business located in the Eastern District of California.

9. Defendant Frank Castillo ("Castillo") is and at all relevant times was an individual residing and doing business in the Eastern District of California.

10. Defendants Kelly Runkle ("Runkle") and Sora Barnes ("Barnes") are and at all relevant times were individuals residing and doing business in the Eastern District of

California.

11. Defendant Kenny Cruz aka Kenneth Cruz ("KC") is and at all relevant times was an individual residing and doing business in the Eastern District of California.

12. Defendant KC Development, LLC ("KC LLC") is and at all relevant times was a duly formed California limited liability company with its principal place of business located in the Eastern District of California.

13. Defendant Vitalis Partners, LLC ("Vitalis") is and at all relevant times was a duly formed California limited liability company with its principal place of business located in the Eastern District of California.

14. Defendant Professional Partners, LLC ("PP") is and at all relevant times was a duly formed California limited liability company with its principal place of business located in the Eastern District of California.

15. Defendant MCG Architects ("MCG") is and at all relevant times was a duly formed California corporation with its principal place of business located in the Central District of California.

16. With the exception of MCG, each defendant was the agent, employee, and employer of each of its co-defendants, and in doing the acts hereinafter mentioned, each defendant was acting within the scope of its authority and as such agent and employee with the permission and consent of its co-defendants, and each of them.

17. At all times herein mentioned, LH Corp, Harmon LLP, Vitalis, and PP were the alter egos of LH. There exists and at all times relevant herein has existed a unity of interest and ownership between LH Corp, Harmon LLP, Vitalis, and PP on the one hand, and LH on the other, such that any separateness between them has ceased to exist. LH used the assets of LH Corp, Harmon LLP, Vitalis, and PP for his own personal use. LH co-mingled the assets of LH Corp, Harmon LLP, Vitalis, and PP with his own. LH failed to maintain adequate records for LH Corp, Harmon LLP, Vitalis, and PP. At all times herein mentioned, LH Corp, Harmon LLP, Vitalis, and PP were mere shells, instrumentalities and/or conduits through which LH carried on his business exactly as he

conducted it before their formation. LH exercised complete control and dominance over LH Corp, Harmon LLP, Vitalis, and PP such that any individuality or separateness of any of these entities as distinct from LH has ceased to exist. To hold LH Corp, Harmon LLP, Vitalis, and PP as separate entities from LH would sanction fraud and promote injustice.

18. At all times herein mentioned, KC LLC, and Vitalis were the alter egos of KC. There exists and at all times relevant herein has existed a unity of interest and ownership between KC LLC, and Vitalis on the one hand, and KC on the other such that any separateness between them has ceased to exist. KC used the assets of KC LLC, and PP for his own personal use. KC co-mingled the assets of KC LLC, and Vitalis with his own. KC failed to maintain adequate records for KC LLC, and Vitalis. At all times herein mentioned, KC LLC, and Vitalis were mere shells, instrumentalities and/or conduits through which KC carried on his business exactly as he conducted it before their formation. KC exercised complete control and dominance over KC LLC, and Vitalis such that any individuality or separateness of any of these entities as distinct from KC has ceased to exist. To hold KC LLC, and Vitalis as separate entities from KC would sanction fraud and promote injustice.

## III.

## THE RELATIONSHIPS BETWEEN PLAINTIFFS AND THEIR FINANCIAL ADVISORS.

19. Anthony is a professional basketball player for the Denver Nuggets.

20. In or about 2003, Anthony on the one hand, and LH on the other, orally agreed that:

    a. LH and/or his accounting/business management firm would be the business managers, financial advisors, trustees, and accountants for Anthony and any entity which Anthony formed or might form in the future;

    b. with respect to monies entrusted to LH and/or his accounting/business management firm by Anthony and/or any entity which Anthony formed or might form in the future, LH and/or his accounting/business management firm would invest such

monies only with Anthony's knowledge and consent; and,

    c. LH and/or his accounting/business management firm would act as fiduciaries and trustees for Anthony and any entity which Anthony formed or might form in the future. In particular, LH orally represented that he and/or his business management firm would, in a fiduciary capacity, protect and safeguard the assets of Anthony and any entity which Anthony formed or might form in the future.

21. On several occasions, from in or about 2003 through in or about 2008, LH, on behalf of LH Corp, Harmon LLP, Castillo, Runkle, Barnes, and LH (collectively "Advisors") orally made the same representations to Anthony as contained in the preceding paragraph.

22. From in or about 2003 through in or about 2009, based upon LH's representations to Anthony as set forth in the preceding two paragraphs, Anthony caused Plaintiffs' revenues to be sent to Advisors in the latters' capacities as Plaintiffs' fiduciaries and trustees.

23. From in or about 2003 through in or about 2009, Advisors were the business managers, financial advisors, accountants, fiduciaries, and trustees for Plaintiffs.

24. From in or about 2003 through in or about 2009, Advisors provided Plaintiffs with business management, financial, trustee, and accounting services ("the Services"). The Services included the handling of Plaintiff's financial affairs including but not limited to paying Plaintiffs' bills.

25. At all relevant times, based upon LH's above pled representations, Plaintiffs justifiably relied upon Advisors as their trustees and fiduciaries.

## IV.

## DEFENDANTS' WRONGFUL CONDUCT

26. All of the wrongful conduct complained of in this lawsuit was discovered in early 2009 after Plaintiffs disassociated with Advisors.

### The Vitalis Transfers

27. On or about March 29, 2006, LH Corp and KC LLC formed Vitalis.

28. Vitalis's operating agreement ("the Vitalis Operating Agreement") entitled "Limited Liability Company Agreement Vitalis Partners, LLC", a true and correct copy which is attached hereto as Exhibit 1, is dated March 15, 2006. LH executed the Vitalis Operating Agreement on behalf of LH Corp, and KC executed it on behalf of KC LLC. The Vitalis Operating Agreement is conspicuously silent as to how much, if any, capital contributions were paid by its members.

29. From on or about June 2, 2008 through on or about October 21, 2008, without Plaintiffs' knowledge or consent, Advisors wrongfully transferred by wire, sums totaling $1,750,000.00 belonging to Plaintiffs, which Advisors were holding as Plaintiffs' trustees and fiduciaries, to and/or on behalf of Vitalis ('the Vitalis Transfers") as follows:

a. $150,000.000 on or about November 2, 2005 to MCG;

b. $1,000,000.00 on June 2, 2008;

c. $200,000.00 on September 30, 2008;

d.  $200,000.00 on October 6, 2008;

e. $100,000.00 on October 15, 2008; and,

e. $100,000.000 on or about October 21, 2008.

30. In an effort to cause the wrongful Vitalis Transfers to appear legitimate, LH Corp, LH, KC LLC, and KC caused a document entitled: "First Amendment To Limited Liability Company Agreement Vitalis Partners, LLC ("the Vitalis Operating Agreement Amendment"), a true and correct copy which is attached hereto as Exhibit 2, to be created, which, states, among other things, that COP is purchasing a 10% membership interest in Vitalis for $2,000,000.00. The Vitalis Operating Agreement Amendment was signed by LH for LH Corp and KC for KC LLC.

31. None of the Plaintiffs executed, knew about, or approved the Vitalis Operating Agreement Amendment and any of the Vitalis Transfers.

32. At all relevant times, Advisors owned and/or controlled Vitalis.

33. The Vitalis Transfers were made for the benefit of  LH, LH Corp, KC, and KC LLC, and to the detriment of Plaintiffs.  When the Vitalis Transfers were made, Plaintiffs

1 were not indebted to any recipient of any of the Vitalis Transfers to justify the Vitalis
2 Transfers, and had not received any consideration of any sort from any recipient of any of
3 the Vitalis Transfers for the Vitalis Transfers. At the time that the Vitalis Transfers were
4 made, LH, LH Corp, KC, and KC LLC had a financial interest in Vitalis. In short, LH,
5 LH Corp, KC, and KC LLC simply took and transferred Plaintiffs' monies via the Vitalis
6 Transfers for their own selfish, personal interests, all to the detriment of Plaintiffs, thus
7 breaching their fiduciary duties to Plaintiffs.

8     34. Advisors caused the Vitalis Transfers to take place, despite their knowing at all
9 relevant times that the Vitalis Transfers were made to the detriment of Plaintiffs.

10     35. At all relevant times, KC and LLC knew that the Vitalis Transfers were
11 wrongful and were made without Plaintiffs' knowledge and consent.

12     36. KC and KC LLC caused the Vitalis Transfers to be received, despite their
13 knowing at all relevant times that the Vitalis Transfers were wrongful and were made to
14 the detriment of Plaintiffs.

15     37. At all relevant times, MCG was a company providing architectural services.
16 Starting in or about 2005, MCG provided architectural services to LH, LH Corp, KC, and
17 KC LLC relating to Vitalis.

18     38. Advisors paid MCG's bills in whole or in part from monies belonging to
19 Plaintiffs which Plaintiffs reasonably discovered in 2009.

20     39. At all relevant times, MCG had actual and/or constructive knowledge that the
21 monies which it received from defendants were wrongfully paid in that the monies
22 belonged to Plaintiffs and did not belong to any of the defendants.

### The PP Transfers

24     40. In or about late 2005 through in or about 2007 or later, which Plaintiffs'
25 reasonably discovered in or about early 2009, Advisors, without Plaintiff's knowledge or
26 consent, wrongfully caused the sum of $265,500.00, which belonged to Plaintiffs, and
27 which Advisors were holding for Plaintiffs as Plaintiffs' trustees and fiduciaries, to be
28 transferred to PP and/or for the benefit of PP ("the PP Transfers") as follows:

a. On or about November 3, 2005, defendants wired $150,000.00 to PP;

b. On or about February 13, 2005, defendants wired $3,000.00 to PP; and,

c. On or about May 29, 2008, defendants wired $50,000.00 to PP.

These sums total $203,000.00. On or about June 26, 2006, PP returned $37,500.00 to Plaintiffs.

41. At all relevant times, LH, LH Corp, and Harmon LLP owned PP and Advisors controlled PP.

42. The PP Transfers were made for the benefit of LH, LH Corp, and Harmon LLP, and to the detriment of Plaintiffs. When the PP Transfers were made, Plaintiffs were not indebted to any recipient of any of the PP Transfers to justify the PP Transfers, and had not received any consideration of any sort from any recipient of any of the PP Transfers for the PP Transfers. At the time that the PP Transfers were made, upon information and belief, defendants except MCG had a financial interest in PP. In short, Advisors simply took and transferred Plaintiffs' monies via the PP Transfers for their own selfish, personal interests, all to the detriment of Plaintiffs, thus breaching their fiduciary duties to Plaintiffs.

43. Advisors caused the PP Transfers to take place, despite their knowing at all relevant times that the PP Transfers were made to the detriment of Plaintiffs.

44. At all relevant times, Advisors knew that the PP Transfers were made without Plaintiffs' knowledge and consent.

**Advisors' Refusal To Account, to Provide Any Information, and to Produce Any Books and Records**

45. In or about early 2009, Plaintiffs fired Advisors as their business managers and financial consultants and hired a new business manager and financial consultant ("New Manager").

46. In or about early 2009, Advisors transferred what they represented to be their complete books and records relating to New Manager. In transferring these documents, Advisors represented to New Manager that the documents were complete, true and

correct.

47. The books and records transferred by Advisors to New Manager were not complete, and not true and correct. Significant documents are missing. Further, portions of the books and records are mis-coded in a deliberate attempt to hide monies converted by defendants. One such example relates to the November 2, 2005 $150,000.00 transfer to MCG, which is coded as a payment relating to PP in the books and records transferred by Advisors to New Manager. Instead, the $150,000.00 payment to MCG is actually a payment relating to Vitalis. In any event, this $150,000.00 transfer to MCG is wrongful.

48. On February 23, 2009, Plaintiffs, via their attorney Robert W. Hirsh ("Hirsh") emailed Advisors a letter ("the Hirsh Letter"), which demanded that Advisors immediately send to Hirsh for the benefit of Plaintiffs:

    a. a detailed letter, which, among other things, with respect to Vitalis and PP:

        1. describes their present business, including any pending deals;

        2. describes their original business plans and any changes thereto, i.e. business history;

        3. provides the names and contact information of their members;

        4. states the amounts invested by each member and the dates that any monies were received; and,

        5. states the amounts received from any other source and the dates that such monies were received;

    b. the following documents relating to Vitalis and PP which were prepared at any time:

        1. Formation documents;

        2. Membership agreements and amendments thereto;

        3. Accountings.

        4. Financial statements;

       5. Contracts;

       6. Tax returns;

       7. Loan applications; and,

       8. All documents signed by or on behalf of Anthony; and,

    c. All documents relating to the business relationship between Advisors and Plaintiffs, including all retainer agreements, fee agreements, and Powers of Attorney, if any.

49. Advisors have failed and refused to send any information to Hirsh who is acting on behalf of Plaintiffs.

50. Advisors have failed and refused to send a single document to Hirsh who is acting on behalf of Plaintiffs.

### **Additional Wrongful Transfers**

51. Upon information and belief, defendants, other than MCG wrongfully:

    a. transferred other monies and assets belonging to Plaintiffs to third parties;

    b. billed and collected fees for accounting and management fees which they did not earn.

The monies referred to in subsections (a)(b) of this paragraph shall collectively be referred to as "Other Transfers".

52. Among other things, Plaintiffs believe that defendants made the Other Transfers based upon:

    a. Advisors failing to keep accurate books and records relating to Plaintiffs;

    b. Advisors failing and refusing to turn over all of Plaintiffs' books and records to Hirsh and to Plaintiffs new business manager; and,

    c. emails authored by LH in or about late January, 2009, which state, among other things:

       1. Advisors are charging Plaintiffs fees for Advisors turning over

10
COMPLAINT

Plaintiffs' books, records, and information to Plaintiffs' new business manager; and,

2. "Let the games begin" [referring to Advisors' billings].

53. The Other Transfers were wrongful: they were made to the detriment of Plaintiffs and for the benefit of defendants. Plaintiffs seek recovery/disgorgement of all Other Transfers.

## Commingling

54. At all relevant times, defendants except MCG commingled Plaintiffs' assets with their own.

## FIRST CLAIM FOR RELIEF

### (Conversion Against All Defendants except MCG)

55. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

56. By making and receiving the Vitalis Transfers, the PP Transfers, and the Other Transfers, defendants converted Plaintiffs' property to their own personal use.

57. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

58. In doing the acts herein alleged, defendants acted with oppression, fraud, and malice. Defendants' conduct shocks the conscience. Plaintiffs are entitled to punitive damages in an amount subject to proof from defendants.

## SECOND CLAIM FOR RELIEF

### (Negligence Against Advisors)

59. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

60. As Plaintiffs' business managers, financial advisors, trustees, and accountants, Advisors owed Plaintiffs a duty of care.

61. Advisors breached their duty of care by engaging in the above pled wrongful conduct.

62. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

### THIRD CLAIM FOR RELIEF

**(Breach of Fiduciary Duty Against Advisors)**

63. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

64. As Plaintiffs' business managers, financial advisors, trustees, and accountants, Advisors owed Plaintiffs a fiduciary duty.

65. Advisors breached their fiduciary duty to Plaintiffs by engaging in the above pled wrongful conduct.

66. Advisors wrongful conduct constitutes malfeasance. At all relevant times, Advisors knew that their conduct was wrongful or in the alternative, Advisors behaved recklessly.

67. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

68. In doing the acts herein alleged, defendants acted with oppression, fraud, and malice. Defendants' conduct shocks the conscience. Plaintiffs are entitled to punitive damages in an amount subject to proof from defendants.

### FOURTH CLAIM FOR RELIEF

**(B & P Code Section 17200, et. seq. Against All Defendants except MCG)**

69. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

70. The above described conduct by defendants constitutes deceptive business practices within the meaning of Business and Professions Code Section 17200, et. seq.

71. Pursuant to Business and Professions Code Section 17203, an order should issue requiring defendants to disgorge all monies which it received from any person

belonging to Plaintiffs arising out of the Vitalis Transfers, the PP Transfers and Other Transfers, and,

all profits which it earned through the use of these monies.

### FIFTH CLAIM FOR RELIEF

### (Concealment Against All Defendants except MCG)

72. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

73. When Advisors made and defendants received the Vitalis Transfers, the PP Transfers, and Other Transfers, they concealed them from Plaintiffs, all of which constitute material facts.

74. Plaintiffs relied upon Advisors as their fiduciaries to protect and safeguard their assets.

75. When the Vitalis Transfers, the PP Transfers, and Other Transfers were made, defendants concealed these transfers from Plaintiffs, all of which constitutes concealment of material facts.

76. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

77. In doing the acts herein alleged, defendants acted with oppression, fraud, and malice. Defendants' conduct shocks the conscience. Plaintiffs are entitled to punitive damages in an amount subject to proof from defendants.

### SIXTH CLAIM FOR RELIEF

### (Intentional Misrepresentation Against Advisors)

78. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

79. From in or about 2003 through in or about 2008, on several occasions, LH, on behalf of Advisors, orally represented to Anthony, on behalf of Plaintiffs, that if Anthony and/or any entity which Anthony had formed and/or might form in the future, retained LH

and/or his then current accounting/business management firm as Plaintiffs' business managers, financial advisors, trustees, and accountants, Advisors would never invest any monies belonging to Anthony and/or any entity which Anthony had formed or might form (including Plaintiffs) without Anthony's knowledge and consent; and, LH and/or his accounting/business management firm would act as fiduciaries and as trustees for Anthony and any entity which Anthony had formed and might form.

80. Plaintiffs justifiably relied upon the representations contained in the preceding paragraph which were material facts. In particular, from in or about 2003 through in or about early 2009, based upon LH's representations to Anthony as set forth in the preceding two paragraphs:

    a. Plaintiffs retained Advisors to be their business managers, financial advisors, accountants, fiduciaries, and trustees;

    b. Advisors were Plaintiffs' business managers, financial advisors, accountants, fiduciaries, and trustees; and,

    c. Plaintiffs gave Advisors access and control of Plaintiffs' monies as Plaintiffs' trustees and fiduciaries, thus giving Advisors the ability to make the Vitalis Transfers, the PP Transfers, and the Other Transfers.

81. The representations made by Advisors to Plaintiffs were false.

82. Advisors made these representations with knowledge of their falsity or in reckless disregard of the truth.

83. Advisors never intended to act in a proper fiduciary capacity to Plaintiffs and at all times, intended to place their own selfish interests above that of Plaintiffs.

84. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

85. In doing the acts herein alleged, defendants acted with oppression, fraud, and malice. Defendants' conduct shocks the conscience. Plaintiffs are entitled to punitive damages in an amount subject to proof from defendants.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment Against All Defendants except MCG)

86. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

87. Defendants have been unjustly enriched by their wrongful conduct as alleged above, all to Plaintiffs' detriment.

88. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

## EIGHTH CLAIM FOR RELIEF

### (Imposition of Constructive Trust Against All Defendants)

89. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

90. As a result of the above pled wrongful transfers of Plaintiffs' assets, a constructive trust has been formed in which defendants are involuntary trustees for the benefit of Plaintiffs concerning the wrongful transfers of Plaintiffs' assets which they received.

91. Defendants should be declared by this Court to be involuntary trustees of a constructive trust of all property which they received arising out of the Vitalis Transfers, the PP Transfers, and the Other Transfers.

## NINTH CLAIM FOR RELIEF

### (Imposition of Resulting Trust Against All Defendants)

92. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

93. As a result of the above pled wrongful transfers of Plaintiffs' assets, a resulting trust has been formed in which defendants are involuntary trustees for the benefit of Plaintiffs concerning the wrongful transfers of Plaintiffs' assets which they received.

94. Defendants should be declared by this Court to be involuntary trustees of a

resulting trust of all property which they received arising out of the Vitalis Transfers, the PP Transfers, and the Other Transfers.

### TENTH CLAIM FOR RELIEF

**(Willful Misconduct Against All Defendants except MCG)**

95. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

96. Defendants' conduct constitutes willful misconduct against Plaintiffs.

97. As a proximate result of Defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $2,000,000.00.

98. In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice. Defendants' conduct shocks the conscience. Plaintiffs are entitled to punitive damages in an amount subject to proof from each of the Defendants.

### ELEVENTH CLAIM FOR RELIEF

**(Declaratory Relief Against All Defendants)**

99. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

100. Various controversies exist among the parties including but not limited to whether defendants are:

   a. entitled to retain the proceeds of the Vitalis Transfers, the PP Transfers, and the Other Transfers;

   b. entitled to retain any profits earned from the proceeds of the Vitalis Transfers, the PP Transfers, and the Other Transfers; and,

   c. required to provide Plaintiffs with a full accounting relating to the Vitalis Transfers, the PP Transfers, and the Other Transfers, including profits earned through the use of these monies.

101. A judicial determination is necessary to ascertain the rights of the parties in connection with the above pled wrongful transfers of Plaintiffs' assets.

## TWELFTH CLAIM FOR RELIEF

### (Accounting Against All Defendants except MCG)

102. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

103. Defendants commingled Plaintiffs' assets with their own.

104. Defendants were Plaintiffs' trustees, fiduciaries, business managers, and accountants from in or about 2003 to in or about early 2009.

105. Defendants refuse to provide Plaintiffs with a complete accounting.

106. An accounting of defendants' books and records, including all financial records, is necessary to ascertain Plaintiffs' rights in property which defendants have caused Plaintiffs' assets to be commingled, among other things.

## THIRTEENTH CLAIM FOR RELIEF

### (Conversion Against MCG)

107. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

108. By wrongfully receiving monies from the remaining defendants which belongs to Plaintiffs, MCG converted Plaintiffs' property to their own personal use.

109. As a proximate result of defendants' wrongful conduct, Plaintiffs have been damaged in a sum according to proof at time of trial, but in no event less than $150,000.00.

110. In doing the acts herein alleged, MCG acted with oppression, fraud, and malice. MCG's conduct shocks the conscience. Plaintiffs are entitled to punitive damages in an amount subject to proof from each of the Defendants.

## FOURTEENTH CLAIM FOR RELIEF

### (B & P Code Section 17200, et. seq. Against MCG)

111. Plaintiffs repeat and reallege paragraphs 1 through 54, inclusive, and incorporate them herein by this reference.

112. MCG, with actual and/or constructive knowledge, wrongfully accepted

1  payment for services rendered to its other clients with monies belonging to Plaintiffs.

2      113. The above described conduct by MCG constitutes deceptive business practices
3  within the meaning of Business and Professions Code Section 17200, et. seq.

4      114. Pursuant to Business and Professions Code Section 17203, an order should
5  issue requiring MCG to disgorge all monies which it received from any person belonging
6  to Plaintiffs arising out of the Vitalis Transfers, the PP Transfers and Other Transfers, and,
7  all profits which it earned through the use of these monies.

### FIFTEENTH CLAIM FOR RELIEF
### (Unjust Enrichment Against MCG)

10     115. Plaintiffs repeat and reallege paragraphs 1 through 54, 109, and 112,
11 inclusive, and incorporate them herein by this reference.

12     116. MCG has been unjustly enriched by its wrongful conduct to Plaintiffs'
13 detriment.

14     117. As a proximate result of MCG's wrongful conduct, Plaintiffs have been
15 damaged in a sum according to proof at time of trial, but in no event less than
16 $150,000.00.

17 PLAINTIFFS REQUEST A TRIAL BY JURY.

19     WHEREFORE, Plaintiffs pray for judgment as follows:

### AS TO ALL DEFENDANTS EXCEPT MCG

21     1. For compensatory damages in the sum of $2,000,000.00;

22     2. For punitive damages subject to proof;

23     3. For interest thereon at the maximum legal rate;

24     4. For costs, including reasonable attorneys fees;

25     5. For imposition of a constructive trust to which defendants hold for Plaintiffs'
26 benefit all monies wrongfully disbursed to defendants belonging to Plaintiff;

27     6. For imposition of a resulting trust to which defendants hold for Plaintiffs'
28 benefit all monies wrongfully disbursed to defendants belonging to Plaintiff;

7. For disgorgement of all monies received from any person belonging to Plaintiffs arising out of the Vitalis Transfers, the PP Transfers, and Other Transfers and of all profits earned through the use of these monies;

8. For declaratory relief to determine various controversies among the parties including but not limited to whether defendants are:

    a. entitled to retain the proceeds of the Vitalis Transfers, the PP Transfers, and the Other Transfers;

    b. entitled to retain any profits earned from the proceeds of the Vitalis Transfers, the PP Transfers, and the Other Transfers; and,

    c. required to provide Plaintiffs with a full accounting relating to the Vitalis Transfers, the PP Transfers, and the Other Transfers, including profits earned through the use of these monies;

9. For an accounting; and,

10. For such other relief that the Court deems just and proper.

### AS TO MCG

1. For compensatory damages in the sum of $150,000.00;

2. For punitive damages subject to proof;

3. For interest thereon at the maximum legal rate;

4. For costs, including reasonable attorneys fees;

5. For imposition of a constructive trust of all monies belonging to Plaintiffs which MCG received from defendants;

6. For imposition of a resulting trust of all monies belonging to Plaintiffs which MCG received from defendants;

7. For disgorgement of all monies received from any person belonging to Plaintiffs arising out of the Vitalis Transfers, the PP Transfers, and Other Transfers and of all profits earned through the use of these monies;

8. For declaratory relief to determine various controversies among the parties including but not limited to whether MCG is:

a. entitled to retain the proceeds of the Vitalis Transfers, the PP Transfers, and the Other Transfers;

b. entitled to retain any profits earned from the proceeds of the Vitalis Transfers, the PP Transfers, and the Other Transfers; and,

c. required to provide Plaintiffs with a full accounting relating to the Vitalis Transfers, the PP Transfers, and the Other Transfers, including profits earned through the use of these monies;

9. For such other relief that the Court deems just and proper.

PLAINTIFFS REQUEST A TRIAL BY JURY.

Dated: August 17, 2009       ROBERT W. HIRSH & ASSOCIATES

/s/ Robert W. Hirsh
By: Robert W. Hirsh

Attorneys for Plaintiffs Carmelo Anthony, Melo Enterprises, Inc., and Chosen One Properties, LLC

PLAINTIFFS REQUEST A TRIAL BY JURY.