1  Robert W. Hirsh, SBN 102731
   ROBERT W. HIRSH & ASSOCIATES
2  8383 Wilshire Boulevard, Suite 510
   Beverly Hills, California 92011
3  Telephone:    310/275-7800
   Facsimile:    310/275-4050
4
   Attorneys for Plaintiffs Carmelo Anthony,
5  Melo Enterprises, Inc. and Chosen One
   Properties, LLC
6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 CARMELO ANTHONY; MELO ENTERPRISES,    )   Case No.:  2:09-CV-02272 WBS-KJM
   INC.; and CHOSEN ONE PROPERTIES, LLC, )
12                                       )
        Plaintiffs,                      )   EXHIBIT "1" TO COMPLAINT FILED
13                                       )   AUGUST 17, 2009
        v.                               )
14                                       )
   LARRY HARMON aka LARRY W. HARMON      )
15 aka LAWRENCE HARMON; LARRY            )
   HARMON & ASSOCIATES, P.A.; HARMON-    )
16 CASTILLO, LLP; FRANK CASTILLO; KELLY  )
   RUNKLE; SORA BARNES; KENNY CRUZ aka   )
17 KENNETH CRUZ; KC DEVELOPMENT, LLC;    )
   VITALIS PARTNERS, LLC; PROFESSIONAL   )
18 PARTNERS, LLC; and MCG PARTNERS       )
                                         )
19      Defendant.                       )
                                         )
20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# LIMITED LIABILITY COMPANY AGREEMENT

## VITALIS PARTNERS, LLC

THIS LIMITED LIABILITY COMPANY AGREEMENT is made and entered into, and is effective as of this 15th day of March, 2006, by and between Larry Harmon & Associates, P.A., a California Corporation ("LHA") and KC Development Company, LLC (KCD), a California LLC, as members of the "Company" (as defined below), and each other "Person" (as defined below) who is admitted to the Company as a member of the Company.

## RECITALS

WHEREAS, the parties hereto desire to form a limited liablility company pursuant to the Delaware Limited Liability Company Act by filing a Certificate of Formation of the Company with the office of the Secretary of State of the State of Delaware and entering into this Agreement (as defined below); and

WHEREAS, it is intended by the parties hereto that the Company may at the Company's option have multiple series and that in such event the debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a particular series of the Company will be enforceable against the assets of such series only, and not against the assets of the Company generally or any other series thereof, and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Company generally or any other series thereof shall be enforceable against the assets of such series; and

In consideration of the mutual promises and obligations contained herein, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01 - Definitions:

The following terms used in this Agreement shall have the following meanings:

"Act" shall mean the Delaware Limited Liability Company Act, 6 Del. C. § 18-10 1, et seq., as amended from time to time.

"Agreement" shall mean this Limited Liability Company Agreement, as amended, modified, supplemented or restated from time to time.

"Capital Account" shall mean, with respect to any Series and with respect to any Member, the capital account maintained for such Member that is associated with such Series in accordance with the provisions of Section 8.03. A separate Capital Account shall be maintained for each Member's interest in each Series.

"Capital Contribution" shall mean, with respect to any Member, any contribution to the Company with respect to a Series in cash or other property (at such other property's initial Gross Asset Value) by such Member whenever made. "Initial Capital Contribution" shall mean, with respect to any Member, the initial contribution to the Company by such Member with respect to a Series pursuant to this Agreement.

"Certificate of Formation" shall mean the Certificate of Formation of the Company and any and all amendments thereto and restatements thereof filed on behalf of the Company with the office of the Secretary of State of the State of Delaware pursuant to the Act.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, or any superseding federal tax law. A reference herein to a specific Code Section refers, not only to such specific Section, but also to any corresponding provision of any superseding federal tax statute, as such specific Section or such corresponding provision is in effect on the date of application of the provisions of this Agreement containing such reference.

"Company" shall refer to VITALIS PARTNERS, LLC, formed and continued under and pursuant to the Act and this Agreement.

"Depreciation" shall mean, with respect to a Series, and for each Fiscal Year or other period, an amount equal to the depreciation, amortization or other cost recovery deduction allowable with respect to an asset associated with such Series for such Fiscal Year or other period; provided, however, that if the Gross Asset Value of an asset associated with such Series differs from its adjusted basis for federal income-tax purposes at the beginning of such Fiscal Year or other period, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income-tax depreciation, amortization or other cost recovery deduction with respect to such asset for such Fiscal Year or other period bears to such beginning adjusted tax basis; and provided further, that if the federal income-tax depreciation, amortization or other cost recovery deduction for such Fiscal Year or other period is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by Members associated with such Series holding a Majority Interest in such Series.

"Distributable Cash" shall mean, with respect to a Series, all cash, revenues and funds received by the Company with respect to such Series from such Series' operations, less the sum of the following to the extent paid or set aside by the Company with respect to such Series: (i) all principal and interest payments on indebtedness of the Company with respect to such Series and all other sums paid to lenders with respect to such Series; (ii) all cash expenditures incurred in the normal operation of the Company's business with respect to such Series; and (iii) such Reserves as the Members associated with such Series deem reasonably necessary for the proper operation of the Company's business with respect to such Series.

"Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, foreign trust or foreign business organization or other legal entity.

"Fiscal Year" shall mean (i) the period commencing upon the formation of the Company and ending on December 31, 2006, (ii) any subsequent twelve (12) month period commencing on

January 1 and ending on December 31, or (iii) any portion of the period described in Clause (ii) of this sentence for which the Company is required to allocate Profits, Losses and other items of Company income, gain, loss or deduction pursuant to Article IX hereof.

"Gross Asset Value" shall mean, with respect to any asset associated with a Series, such asset's adjusted basis for federal income-tax purposes, except as follows:

> (i) the initial Gross Asset Value of any asset contributed by a Member to the Company with respect to a Series shall be the gross fair market value of such asset, as agreed to by Members associated with such Series holding a Majority Interest in such Series;

> (ii) the Gross Asset Value of all Company assets associated with a Series shall be adjusted to equal their respective gross fair market values, as determined by Members associated with such Series holding a Majority Interest in such Series, as of the following times: (a) the acquisition of an additional interest in the Company with respect to such Series by any new or existing Member in exchange for more than a *de minimis* Capital Contribution; (b) the distribution by the Company with respect to such Series to a Member of more than a *de minimis* amount of Company assets associated with such Series as consideration for an interest in the Company; and (c) the liquidation of the Company within the meaning of Treasury Regulation § 1.7041 (b)(2)(ii)(g); provided, however, that adjustments pursuant to Clause (a) and Clause (b) of this sentence shall be made only if Members associated with such Series holding a Majority Interest in such Series reasonably determine that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members in such Series; and

> (iii) the Gross Asset Value of any Company asset associated with a Series that is distributed to any Member shall be the gross fair market value of such asset on the date of distribution, as determined by Members associated with such Series holding a Majority Interest in such Series.

> If the Gross Asset Value of an asset has been determined or adjusted pursuant to Paragraph (i) or Paragraph (ii) above, such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

"Majority Interest" shall mean, with respect to a Series, the Membership Interests of one or more Members that in the aggregate exceed 50% of all Percentage Interests owned by Members associated with such Series.

"Member" shall include LHA and KCD, each in their capacities as members of the Company associated with a Series (as such Series may, from time to time, be created in accordance with the terms of this Agreement), and (iii) Persons admitted as members of the Company in accordance with this Agreement.

"Membership Interest" shall mean a Member's entire limited liability company interest in the Company with respect to a Series.

"Percentage Interest" shall mean, for any Member associated with a Series, such Member's Percentage Interest in such Series as set forth on <u>Exhibit A</u> attached hereto, which Percentage Interest may be changed from time to time by the unanimous vote of the Members associated with such Series. Any change in a Member's Percentage Interest with respect to any Series pursuant to the immediately preceding sentence shall require (i) the same change in such Member's Percentage Interest in all other Series, and (ii) the adoption of appropriate amendments to this Agreement to ensure that the allocation provisions of this Agreement are respected for federal income-tax purposes.

"Persons" shall mean any individual or Entity, their heirs, executors, administrators, legal representatives, successors, and assigns of such individual or Entity where the context so permits.

"Profits" and "Losses" shall mean, with respect to a Series, and for each Fiscal Year, an amount equal to the Company's taxable income or loss associated with such Series for such Fiscal Year, determined in accordance with §703(a) of the Code (but including in taxable income or loss, for this purpose, all items of income, gain, loss or deduction associated with such Series that are required to be stated separately pursuant to §703(a)(1) of the Code), with the following adjustments:

(i)     any income of the Company associated with such Series that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be added to such taxable income or loss;

(ii)    any expenditures of the Company associated with such Series that are described in §705(a)(2)(B) of the Code (or treated as expenditures described in §705(a)(2)(B) of the Code pursuant to Treasury Regulation § 1 .704-1(b)(2)(iv)(i)) and not otherwise taken into account in computing Profits or Losses pursuant to this definition shall be subtracted from such taxable income or loss;

(iii)   in the event the Gross Asset Value of any Company asset associated with such Series is adjusted in accordance with Paragraph (ii) or Paragraph (iii) of the definition of "Gross Asset Value" above, the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(iv)    gain or loss resulting from any disposition of any asset of the Company associated with such Series with respect to which gain or loss is recognized for federal income-tax purposes shall be computed by reference to the Gross Asset Value of the asset disposed of, notwithstanding that the adjusted tax basis of such asset differs from its Gross Asset Value; and

(v)    in lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation associated with such Series for such Fiscal Year or other period, computed in accordance with the definition of "Depreciation" above.

"Reserves" shall mean, with respect to a Series, funds set aside or amounts allocated to reserves that shall be maintained in amounts deemed sufficient by the Members associated with such Series for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership or operation of the business of the Company with respect to such Series, or incident to the liquidation of such Series pursuant to Section 12.03.

"Separate Series Agreement" shall have the meaning set forth in Section 2.01.

"Series" shall mean a designated series of Members and Membership Interests established in accordance with this Agreement having separate rights, powers or duties with respect to specified property or obligations or profits and losses associated with specified property or obligations and, to the extent provided in this Agreement or a Separate Series Agreement, having a separate business purpose or objective.

"Tax Matters Partner" shall have the meaning set forth in Section 9.12.

"Treasury Regulations" shall mean the income-tax regulations, including temporary regulations, promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of superseding regulations).

Section 1.02 - Headings:

The headings and subheadings in this Agreement are included for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

## ARTICLE II
## FORMATION OF COMPANY

Section 2.01 - Formation and Series Creation:

(a)    Sil Reggiardo, as an authorized person within the meaning of the Act, is hereby authorized to execute, deliver and file the Certificate of Formation and any all amendments to and restatements of the Certificate of Formation.

(b)    The Members hereby agree to form the Company as a limited liability company under and pursuant to the provisions of the Act and agree that the rights, duties and liabilities of the Members shall be as provided in the Act, except as otherwise provided herein.

(c)    Upon their execution of this Agreement, without the need for the consent or other action of any Person or the need for a Separate Series Agreement, the Members shall acquire Membership Interests associated with a Series. The Company may acquire assets and incur

liabilities or other obligations only to the extent that they are by the Company with respect to a Series and not with respect to the Company generally.

(d)     As established from time to time in accordance with this Agreement, there may be designated additional Series having separate rights, powers or duties with respect to specified property or obligations or profits and losses associated with specified property or obligations and, to the extent provided in this Agreement and a Separate Series Agreement, having a separate business purpose or investment objective. A Member may be a member of one or more Series.

(e)     Without the need for the consent of any Person, the Members by majority interest vote may establish additional Series as they may determine in their sole discretion. The terms of each additional Series shall be as set forth in this Agreement and a separate agreement establishing such Series (a "Separate Series Agreement") substantially in the form of Exhibit B attached hereto. A Separate Series Agreement must be executed by the Members as Members associated with such Series. To the extent that a Separate Series Agreement conflicts with this Agreement, this Agreement shall control.

(f)     No debt, liability or obligation of a Series shall be a debt, liability or obligation of any other Series without the consent of all the Members of such other Series. The debts, liabilities and obligations incurred, contracted for or otherwise existing with respect to a Series shall be enforceable against the assets of such Series only and not against any other assets of the Company generally or any other Series and none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Company generally or any other Series shall be enforceable against the assets of such Series. Separate and distinct records shall be maintained for each and every Series, and assets associated with any such Series shall be accounted for separately from the other assets of the Company, or any other Series of the Company. The Members shall not commingle the assets of one Series with the assets of any other Series. The Certificate of Formation shall contain notice of the limitation of liabilities of a Series as to other Series in conformity with Section 18-2 15 of the Act.

(g)     The Members shall be deemed admitted as members of the Company associated with a newly created Series, upon their execution of a counterpart signature page to the relevant Separate Series Agreement.

(h)     Exhibit A attached hereto shall be updated from time to time as is necessary to reflect accurately the information contained therein, including, without limitation, the establishment of additional Series and the admission of additional Members to the Company associated with such Series. Any revision to Exhibit A attached hereto made in accordance with this Agreement shall not be deemed an amendment to this Agreement. Any reference in this Agreement to Exhibit A attached hereto shall be deemed to be a reference to Exhibit A as amended and in effect from time to time.

Section 2.02 - Name:

The name of the Company shall be VITALIS PARTNERS, LLC.  The business of the Company may be conducted upon compliance with all applicable laws under any other name jointly designated by LHA and KCD.

Section 2.03 - Principal Place of Business:

The principal place of business of the Company shall be at the offices of  Larry Harmon & Associates, P.A., located at 2209 Plaza Drive, Suite 100, Rocklin, CA 95765.  The Company may locate its places of business at any other place or places as the Members may deem advisable.

Section 2.04 - Registered Office and Registered Agent:

The Company's registered office in the State of Delaware shall be at the office of its registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801, and the Company's registered agent in the State of Delaware shall be The Corporation Trust Company. At any time, and may jointly change the registered office and registered agent of the Company by filing the address of the new registered office and/or the name of the new registered agent with the Secretary of State of the State of Delaware pursuant to the Act.

Section 2.05 - Term:

The Company shall have perpetual existence unless the Company is earlier dissolved in accordance with the provisions of this Agreement.

## ARTICLE III
## BUSINESS OF COMPANY

Section 3.01 - Business of Company:

The business of the Company and of each Series shall be:

(a)     To purchase assets and businesses for liquidation and resale and/or to liquidate as agent assets and businesses;

(b)     To transact any and all lawful business for which a limited liability company may be formed under the Act; and

(c)     To transact all business necessary, appropriate, advisable, convenient or incidental to any of the foregoing provisions.

The Company and each Series shall have the power to do any or all of the acts necessary, appropriate, advisable, incidental or convenient to or for the furtherance of the purposes and business described herein and for the protection or benefit of the Company and such Series.  The

Company and each Series shall have any or all of the powers that may be exercised on behalf of the Company or such Series by any Person.

## ARTICLE IV
## NAMES AND ADDRESSES OF MEMBERS

Section 4.01 - Members:

The respective names and addresses of the Members of each Series are set forth on Exhibit A attached hereto.

Section 4.02 - Presidents and Executive Vice Presidents:

The duly elected and qualified persons holding the offices of President or Executive Vice- President of a Member shall be vested with the authority to act as and on behalf of the Member (including by exercising the Member's consent and other rights under this Agreement and the Act). The Executive Vice President of a Member shall exercise said authority only in the absence of the President.

## ARTICLE V
## RIGHTS AND DUTIES OF MEMBERS

Section 5.01 - Management:

The Company shall have perpetual existence unless the Company is earlier dissolved in accordance with the provisions of this Agreement.

The business and affairs of each Series shall be managed by the Members in accordance with this Agreement. Only Members associated with a Series shall direct, manage and control the business and affairs of such Series. Except for situations in which the approval of all or a specified percentage of the Members associated with a Series is expressly required by this Agreement or by nonwaivable provisions of the Act, the Members associated with such Series shall make all decisions regarding matters relating to such Series and perform any and all other acts or activities necessary, appropriate, convenient, advisable or incidental to the management of such Series' business pursuant to the affirmative vote of Members associated with such Series holding a Majority Interest in such Series.

Section 5.02 - Certain Powers of Members:

(a)    Without limiting the generality of Section 5.01, upon the affirmative vote of Members associated with a Series holding a Majority Interest in such Series (unless a different vote is provided for in this Agreement), the Members associated with such Series shall have power and authority, on behalf of such Series:

(i)    To acquire property from any Person as the Members associated with such Series may determine, whether or not such Person is directly or indirectly affiliated or connected with any Member;

(ii)     To borrow money for such Series from banks, other lending institutions, any Member (associated with such Series or otherwise), or affiliates of any Member (associated with such Series or otherwise), on such terms as the Members associated with such Series deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of such Series to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of any Series except by the Members associated with such Series, or, to the extent permitted under the Act and this Agreement, by agents or employees associated with such Series or the Members associated with such Series expressly authorized by the Members associated with such Series to contract such debt or incur such liability;

(iii)    To purchase liability and other insurance to protect the Company's or such Series' property and business;

(iv)     To hold and own such Series' real and personal properties in the name of the Company or such Series, as appropriate;

(v)      To invest funds of such Series in time deposits, short-term governmental obligations, commercial paper or other investments;

(vi)     Upon the affirmative vote of Members associated with such Series holding at least two-thirds of the Percentage Interests in such Series, to sell or otherwise dispose of all or substantially all of the assets of such Series as part of a single transaction or plan as long as such disposition is not in violation of or a cause of a default under any other agreement to which such Series or the Company may be bound;

(vii)    To execute on behalf of such Series all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of such Series' property; assignments; bills of sale; leases; and any other instruments or documents necessary, appropriate, convenient, advisable or incidental to the business of such Series;

(viii)   To employ accountants, legal counsel, managing agents or other experts to perform services for the Company with respect to such Series;

(ix)     To pay, collect, compromise, litigate, arbitrate, or otherwise adjust or settle any and all other claims or demands of or against such Series or to hold such proceeds against the payment of contingent liabilities;

(x)      To enter into any and all other agreements on behalf of the Company with respect to such Series, as appropriate; and

(xi)   To do and perform all other acts as maybe necessary, appropriate, convenient, advisable or incidental to the conduct of such Series' business.

(b)   The unanimous vote of all of the Members associated with each Series shall be required for the Company to merge or consolidate with or into, or convert into, another Entity. Unless authorized to do so by this Agreement or by the Members associated with a Series, no attorney-in-fact, employee or other agent of the Company or such Series shall have any power or authority to bind the Company or such Series in any way, to pledge the Company's or such Series' credit or to render the Company or such Series liable for any purpose. No Member associated with a Series shall have any power or authority to bind the Company or such Series unless such Member shall have been authorized by the Members associated with such Series to act as an agent of the Company with respect to such Series.

Section 5.03 - Liability for Certain Acts:

Each Member associated with a Series shall perform its duties as a member of the Company associated with such Series in good faith, in a manner it reasonably believes to be in. the best interests of the Company and such Series, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Member associated with a Series shall not be liable to the Company, such Series, or to any other Member for any loss or damage sustained by the Company, such Series or such Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct or a wrongful taking by the Member.

Section 5.04 - Members Have No Exclusive Duty to Company or Series:

Any Member or affiliate thereof may engage in or possess an interest in other business ventures of any nature or description, independently or with others, similar or dissimilar to the business of the Company or any Series, and the Company, any Series and the Members shall have no rights by virtue of this Agreement or any Separate Series Agreement in and to such independent ventures or the income or profits derived therefrom, and the pursuit of any such venture, even if competitive with the business of the Company or any Series, shall not be deemed wrongful or improper. No Member or affiliate thereof shall be obligated to present any particular investment opportunity to the Company or any Series even if such opportunity is of a character that, if presented to the Company or such Series, could be taken by the Company or such Series, and any Member or affiliate thereof shall have the right to take for its own account (individually or as a partner or fiduciary) or to recommend to others any such particular investment opportunity.

Section 5.05 - Bank Accounts:

The Members associated with a Series may from time to time open bank accounts in the name of the Company or such Series, as appropriate, and the Members associated with such Series shall be the only signatories thereon, unless Members associated with such Series owning a Majority Interest of such Series determine otherwise.

10

Section 5.06 - Indemnity of the Members. Employees and Other Agents:

(a)     To the fullest extent permitted by applicable law, if Members associated with a Series owning a Majority Interest of such Series approve, a Member associated with such Series, any affiliate of such Member, any officers, directors, shareholders, partners, members, employees, representatives or agents of such Member, or their respective affiliates, or any employee or agent of such Series (each, a "Covered Person") shall be entitled to indemnification from such Series for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company or such Series and in a manner reasonably believed to be within the scope of authority conferred on such Covered Person by this Agreement and any Separate Series Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of fraud, deceit, gross negligence, willful misconduct or a wrongful taking with respect to such acts or omissions; provided, however, that any indemnity under this Section 5.06 shall be provided out of and to the extent of the assets of the such Series only, and no Covered Person or any other Series shall have any personal liability on account thereof.

(b)     To the fullest extent permitted by applicable law, if Members associated with a Series owning a Majority Interest of such Series approve, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by such Series prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by such Series of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 5.06.

(c)     A Series may purchase and maintain insurance, to the extent and in such amounts as the Members associated with such Series shall deem reasonable, on behalf of Covered Persons and such other Persons as the Members associated with such Series shall determine, against any liability that may be asserted against or expenses that may be incurred by any such Person in connection with the activities of such Series or such indemnities, regardless of whether such Series would have the power to indemnify such Person against such liability under the provisions of this Agreement. A Series may enter into indemnity contracts with Covered Persons and such other Persons as the Members associated with such Series shall determine and adopt written procedures pursuant to which arrangements are made for the advancement of expenses and the funding of obligations under this Section 5.06 and containing such other procedures regarding indemnification as are appropriate.

Section 5.07 - Salaries:

The salaries and other compensation of the Members associated with a Series shall be fixed from time to time by an affirmative vote of Members associated with such Series holding at least a Majority Interest of such Series.

## ARTICLE VI
## RIGHTS AND OBLIGATIONS OF MEMBERS

Section 6.01 - Limitation of Liability:

Except as otherwise provided in this Agreement or the Act, the debts, obligations and liabilities of the Company or a Series, whether arising in contract, torts or otherwise, shall be solely the debts, obligations and liabilities of the Company or such Series, as the case may be, and no Member shall be obligated personally for any such debt, obligation or liability of the Company or such Series solely by reason of being a Member. Each Member shall nevertheless be liable for its obligations to make Capital Contributions pursuant to Sections 8.01 and 8.02.

Section 6.02 - List of Members:

Upon the written request of any Member associated with a Series for any purpose reasonably related to such Member's interest in the Company with respect to such Series, the Members associated with such Series shall provide to such Member a list showing the names, addresses and Membership Interests of all Members associated with such Series.

Section 6.03 - Company Books:

The Members associated with a Series shall maintain and preserve, during the existence of such Series, the accounts, books and other relevant Series documents described in Section 9.10. Notwithstanding anything in this Agreement to the contrary, separate and distinct records shall be maintained for each and every Series, and the assets associated with each Series shall be held and accounted for separately from the other assets of the Company or of any other Series. Upon reasonable written request, each Member associated with a Series shall have the right, at a time during ordinary business hours, as reasonably determined by the Members associated with such Series, to inspect and copy, at the requesting Member's expense, the books and records of such Series for any purpose reasonably related to such Member's interest with respect to such Series.

Section 6.04 - Priority and Return of Capital:

Except as maybe expressly provided in Article IX, no Member associated with a Series shall have priority over any other Member associated with such Series, either as to the return of Capital Contributions or as to Profits, Losses or distributions; provided that this Section 6.04 shall not apply to loans made to the Company by a Member with respect to a Series.

Section 6.05 - Liability of a Member to the Company:

A Member who receives a distribution from the Company with respect to a Series is liable to the Company with respect to such Series or to others only to the extent provided by the Act and other applicable law.

## ARTICLE VII
## MEETINGS OF MEMBERS

Section 7.01 - Meetings:

Meetings of the Members associated with a Series, for any purpose or purposes, may be called by any Member or Members associated with such Series holding at least 25% of the Percentage Interests of such Series.

Section 7.02 - Place of Meetings:

The Members may designate anyplace, either within or outside the State of Delaware, as the place of meeting for any meeting of the Members. If a designation is not made, or if a special meeting be otherwise called, the place of meeting shall be the principal place of business of the Company. Any meeting of the Members may also take place by teleconferencing so long as a quorum participate in the same.

Section 7.03 - Notice of Meetings:

Except as provided in Section 7.04, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than five nor more than thirty days before the date of the meeting, either personally or by mail, by or at the direction of the Members or Member calling the meeting, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Member at its address as it appears on the books of the Company, with postage thereon prepaid.

Section 7.04 - Meeting of All Members:

If all the Members associated with a Series shall meet at any time and place, either within or outside the State of Delaware, or participate in a teleconference meeting, and consent to the holding of a meeting at such time and place or by teleconference, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

Section 7.05 - Record Date:

For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof~, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the day immediately prior to the date on which notice of the meeting is mailed or the day immediately prior to the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section 7.05, such determination shall apply to any adjournment thereof.

Section 7.06 - Quorum:

Members associated with a Series holding at least two-thirds of all Percentage Interests of such Series, represented in person or by proxy, shall constitute a quorum at any meeting of Members associated with such Series. In the absence of a quorum at any such meeting, Members associated with such Series holding a majority of the Percentage Interests so represented may adjourn the meeting from time to time for a period not to exceed sixty days without further notice. However, if the adjournment is for more than sixty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Member associated with such Series of record entitled to vote at the meeting. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Members associated with such Series present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of Percentage Interests whose absence would cause less than a quorum.

Section 7.07 - Manner of Acting:

If a quorum is present, the affirmative vote of Members associated with a Series holding a Majority Interest in such Series shall be the act of the Members associated with such Series, unless the vote of a greater or lesser proportion or number is otherwise required by the Act or expressly by this Agreement. Only Members associated with a Series may vote or consent upon any matter, and their vote or consent, as the case maybe, shall be counted in the determination of whether the matter was approved by the Members associated with such Series.

Section 7.08 - Proxies:

At all meetings of Members associated with a Series, a Member associated with such Series may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Members associated with such Series before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy. A proxy may only be given verbally during a meeting taking place by teleconferencing and shall expire at the termination of said teleconference.

Section 7.09 - Action by Members Without a Meeting:

Action required or permitted to be taken at a meeting of Members associated with a Series may be taken without a meeting and without prior notice if consents, whether oral or written, of Members associated with such Series are received representing the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all Members of such Series were present and voted.

Section 7.10 - Waiver of Notice:

When any notice is required to be given to any Member, a waiver thereof in writing signed by the Member entitled to such notice, whether before, at, or after the time stated therein, or the participation in a teleconference meeting, shall be equivalent to the giving of such notice.

**ARTICLE VIII**
**CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS**

Section 8.01 - Members' Capital Contributions:

Each Member associated with a Series shall contribute to such Series the amount as is set forth in Exhibit A attached hereto as its Initial Capital Contribution to the Company with respect to such Series.

Section 8.02 - Additional Contributions or Loans:

A Member associated with a Series shall be required to make such additional Capital Contributions or loans to the Company with respect to such Series as shall be determined by Members associated with such Series owning a Majority Interest of such Series from time to time to be reasonably necessary to meet the expenses and obligations of such Series. After the making of any such determination, the Members associated with such Series shall give written notice to each Member associated with such Series of the aggregate amount of required additional Capital Contributions or loan, and each Member associated with such Series shall deliver to the Company its pro rata share thereof (in proportion to the respective Percentage Interest of the Member in such Series on the date such notice is given) no later than thirty (30) days following the date such notice is given. None of the terms, covenants, obligations or rights contained in this Section 8.02 is or shall be deemed to be for the benefit of any Person other than the Members associated with such Series and the Company with respect to such Series, and, to the fullest extent permitted by law, no third party, including creditors of the Company or of any Series, shall under any circumstances have any right to compel any actions or payments by the Members.

Section 8.03 - Capital Accounts:

(a)     An individual Capital Account with respect to a Series shall be established and maintained for each Member associated with such Series. The original Capital Account established for any Member associated with such Series who acquires an interest in such Series by virtue of an assignment in accordance with the terms of this Agreement shall be in the same amount as, and shall replace, the Capital Account of the assignor of such interest, and, for purposes of this Agreement, such Member shall be deemed to have made the Capital Contributions with respect to such Series made by the assignor of such interest (or made by such assignor's predecessor in interest). To the extent such Member acquires less than the entire interest in such Series of the assignor of the interest so acquired by such Member, the original Capital Account of such Member with respect to such Series and its Capital Contributions shall be in proportion to the interest it acquires, and the Capital Account of the assignor who retains a partial interest in such Series, and the amount of its Capital Contributions, shall be reduced in proportion to the interest he or it retains.

(b)     The Capital Account with respect to a Series of each Member associated with such Series shall be maintained in accordance with the following provisions:

(i)     to such Member's Capital Account with respect to such Series there shall be credited such Member's Capital Contributions with respect to such

Series, such Member's distributive share of Profits with respect to such Series and the amount of any Company liabilities with respect to such Series that are assumed by such Member or that are secured by any Company assets associated with such Series that are distributed to such Member;

(ii) to such Member's Capital Account with respect to such Series there shall be debited the amount of cash and the Gross Asset Value of any other Company assets associated with such Series that are distributed to such Member pursuant to any provision of this Agreement, such Member's distributive share of Losses with respect to such Series and the amount of any liabilities of such Member that are assumed by the Company with respect to such Series or that are secured by any property contributed by such Member to the Company with respect to such Series; and

(iii) in determining the amount of any liability for purposes of this Subsection (b), there shall be taken into account § 752(c) of the Code and any other applicable provisions of the Code and the Treasury Regulations.

(c)     Upon the dissolution and complete liquidation of the Company, the separate Capital Accounts of each Member associated with more than one Series shall be combined into a single Capital Account of such Member.

Section 8.04 - Withdrawal or Reduction of Members' Contributions to Capital:

(a)     A Member associated with a Series shall not receive from the property of such Series any part of its Capital Contribution with respect to such Series until all liabilities of such Series (except liabilities to Members associated with such Series on account of their Capital Contributions to the Company with respect to such Series) have been satisfied (whether by payment or reasonable provision for payment thereof).

(b)     A Member, irrespective of the nature of its Capital Contributions with respect to a Series, has only the right to demand and receive cash in return for such Capital Contributions.

## ARTICLE IX
## ALLOCATIONS AND DISTRIBUTIONS

Section 9.01 - Profits and Losses:

(a)     Subject to the allocation rules of Section 9.02, Profits with respect to any Series for any Fiscal Year shall be allocated among the Members associated with such Series in proportion to such Members' Percentage Interests in such Series.

(b)     Subject to the allocation rules of Section 9.02, Losses with respect to any Series for any Fiscal Year shall be allocated among the Members associated with such Series in proportion to such Members' Percentage Interests in such Series.

Section 9.02 - Allocation Rules:

(a)     In the event Members are admitted to a Series pursuant to this Agreement on different dates, the Profits (or Losses) allocated to the Members associated with such Series for each Fiscal Year during which such Members are so admitted shall be allocated among the Members associated with such Series in proportion to the Percentage Interest each such Member holds from time to time during such Fiscal Year in accordance with §706 of the Code, using any convention permitted by law and selected by Members holding a Majority Interest in such Series.

(b)     For purposes of determining the Profits, Losses or any other items with respect to any Series allocable to any period, Profits, Losses and any such other items shall be determined on a daily, monthly, quarterly or other basis, as determined by Members holding a Majority Interest in such Series using any method that is permissible under §706 of the Code and the Treasury Regulations thereunder.

(c)     Except as otherwise provided in this Agreement, all items of Company income, gain, loss, deduction and any other allocations with respect to a Series not otherwise provided for herein shall be divided among the Members associated with such Series in the same proportions as they share Profits and Losses with respect to such Series for the Fiscal Year in question.

(d)     The Members are aware of the income-tax consequences of the allocations made by this Article IX and hereby agree to be bound by the provisions of this Article IX in reporting their shares of Company income and loss for income-tax purposes.

Section 9.03 - Tax Allocations; Section 704(c) of the Code:

(a)     In accordance with § 704(c) of the Code and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to any property contributed to the capital of the Company with respect to any Series shall, solely for income-tax purposes, be allocated among the 18 Members associated with such Series so as to take account of any variation between the adjusted basis of such Property to the Company for federal income-tax purposes and its initial Gross Asset Value (computed in accordance with Section 1.01 hereof).

(b)     In the event the Gross Asset Value of any Company asset associated with a Series is adjusted pursuant to Paragraph (ii) of the definition of Gross Asset Value" contained in Section 1.01 hereof, subsequent allocations of income, gain, loss and deduction with respect to such asset and such Series shall take account of any variation between the adjusted basis of such asset for federal income-tax purposes and its Gross Asset Value in the same manner as under § 704(c) of the Code and the Treasury Regulations thereunder.

(c)     Any elections or other decisions relating to allocations with respect to a Series under this Section 9.03 including the selection of any allocation method permitted under Treasury Regulation § 1.704-3, shall be made by Members holding a Majority Interest in such Series in any manner that reasonably reflects the purpose and intention of this Agreement. Allocations pursuant to this Section 9.03 are solely for purposes of federal, state and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account with respect to any Series or share of Profits, Losses, other items or distributions pursuant to any provision of this Agreement.

Section 9.04 - Distributable Cash:

Except as otherwise provided in Article XII hereof (relating to the dissolution of the Company), any distribution of the Distributable Cash of any Series during any Fiscal Year shall be made to the Members associated with such Series in proportion to such Members' respective Percentage Interests in such Series.

Section 9.05 - Distribution Rules:

(a)     All distributions with respect to a Series pursuant to Section 9.04 shall be at such times and in such amounts as shall be determined by Members associated with such Series holding a Majority Interest in such Series; provided, however, that the Members shall use their best efforts to cause the Company to distribute to the Members an amount of Distributable Cash as shall be sufficient to enable the Members to fund their federal and state income-tax liabilities attributable to their respective distributive shares of the taxable income of the Company.

(b)     All amounts withheld pursuant to the Code or any provision of any state or local tax law with respect to any payment, distribution or allocation to the Company or the Members shall be treated as amounts distributed to the Members pursuant to this Article IX for all purposes of this Agreement. The Members are authorized to withhold from distributions, or with respect to allocations, to the Members and to pay over to any federal, state or local government any amounts required to be so withheld pursuant to the Code or any provision of any other federal, state or local law and shall allocate such amounts to those Members with respect to which such amounts were withheld.

Section 9.06 - Limitation upon Distributions:

(a)     Notwithstanding any provision to the contrary contained in this Agreement, the Company with respect to a Series shall not make any distribution to any Person on account of its interest in the Company with respect to such Series if such distribution would violate Sections 18215 or 18-607 of the Act or other applicable law.

(b)     The Members associated with a Series may base a determination that a distribution or return of contribution may be made under Section 9.06(a) in good-faith reliance upon a balance sheet and profit and loss statement of the Company with respect to such Series represented to be correct by the Person having charge of its books of account or certified by an independent public or certified public accountant or firm of accountants to fairly reflect the financial condition of the Company and such Series.

Section 9.07 - Accounting Method:

For both financial and tax-reporting purposes and for purposes of determining Profits and Losses, the books and records of the Company with respect to each Series shall be kept on the cash method of accounting in a consistent manner and shall reflect all Company transactions with respect to such Series and be appropriate and adequate for the Company's business.

Section 9.08 - Interest on and Return of Capital Contributions:

No Member shall be entitled to interest on its Capital Contributions or to return of its Capital Contributions.

Section 9.09 - Loans to Company:

Nothing in this Agreement shall prevent any Member from making secured or unsecured loans to the Company or to any Series by agreement with the Company or such Series, as the case maybe.

Section 9.10 - Records, Audits and Reports:

At the expense of the relevant Series, the Members associated with such Series shall maintain separate and distinct records and accounts of the operations and expenditures of such Series. At a minimum, each Series shall keep at the principal place of business of the Company the following records:

(a)    True and full information regarding the status of the business and financial condition of such Series and the Company;

(b)    Promptly after becoming available, a copy of the Company's federal, state and local income tax returns for each year;

(c)    The current list of the name and last known business, residence or mailing address of each Member associated with such Series;

(d)    A copy of this Agreement, Separate Series Agreements and the Certificate of Formation, together with executed copies of any written powers of attorney pursuant to which this Agreement, Separate Series Agreements and the Certificate of Formation have been executed;

(e)    True and full information regarding the amount of cash and a description and statement of the Gross Asset Value of any other property or services contributed by each Member to the Company with respect to such Series and which each Member associated with such Series has agreed to contribute in the future, and the date on which each became a Member;

(f)    Minutes of every meeting;

(g)    Any written consents obtained from Members associated with such Series for actions taken by such Members without a meeting; and

(h)    Unless contained in the Certificate of Formation or this Agreement, a writing prepared by the Members associated with such Series setting out the following:

(i)    The times at which or events on the happening of which any additional contributions agreed to be made by each Member associated with such Series are to be made; and

(ii)    Any right of a Member associated with such Series to receive distributions that include a return of all or any part of the Member's contributions.

<u>Section 9.11 - Returns and Other Elections:</u>

The Members shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's Fiscal Year. All elections permitted to be made by the Company under federal or state laws shall be made by the Members in their sole discretion.

<u>Section 9.12 - Tax Matters Partner:</u>

(a)    LHA is hereby designated as the initial "Tax Matters Partner" of the Company for purposes of §6231(a)(7) of the Code and shall have the power to manage and control, on behalf of the Company, any administrative proceeding at the Company level with the Internal Revenue Service relating to the determination of any item of Company income, gain, loss, deduction or credit for federal income-tax purposes.

(b)    The Tax Matters Partner shall, within ten (10) days of the receipt of any notice from the Internal Revenue Service in any administrative proceeding at the Company level relating to the determination of any Company item of income, gain, loss, deduction or credit, mail a copy of such notice to each Member.

(c)    The Members may at any time hereafter by a vote of Members holding a Majority Interest in each Series designate a new Tax Matters Partner; provided, however, that only a Member may be designated as the Tax Matters Partner of the Company.

<u>Section 9.13 - Right to Make Section 754 Election:</u>

By a vote of Members holding a Majority Interest in each Series, the Members may make or revoke, on behalf of the Company, an election in accordance with §754 of the Code, so as to adjust the basis of Company property in the case of a distribution of property within the meaning of §734 of the Code, and in the case of a transfer of a Company interest within the meaning of §743 of the Code. Each of the Members shall supply the information necessary to give effect to such an election.

<u>Section 9.14 - Tax Classification:</u>

It is the intention of the parties hereto that the Company be classified as a partnership, and not as an association taxable as a corporation, for federal income-tax purposes, and the provisions of this Agreement shall be interpreted in a manner consistent with such intention. No election shall be filed with the Internal Revenue Service (or the tax authorities of any State) to have the Company taxable other than as a partnership for income-tax purposes without the prior consent of all Members.

## ARTICLE X
## TRANSFERABILITY

Section 10.01 - Transfer:

To the fullest extent permitted by law, a Person may not assign, distribute, hypothecate, pledge, recognize, sell or transfer any Membership Interest in a Series to any other Person, except with the express written consent of all Members associated with such Series. A transferee may be admitted as a Member of the Company associated with a Series upon compliance with Section 11.01. If any Member associated with a Series assigns all or any part of its Membership Interest in such Series to a transferee, such Member shall also assign, at the same time, to such transferee, the same proportion of its Membership Interests in each other Series with respect to which such Member is associated.

## ARTICLE XI
## ISSUANCE AND TRANSFERS OF MEMBERSHIP INTERESTS

Section 11.01 - Additional Members and Assignees:

(a)     In addition to the admission to the Company of Members pursuant to Section 2.01, pursuant to the unanimous vote of the Members of a Series, a Person may be admitted to the Company as a Member associated with such Series either (i) by the issuance by the Series of Membership Interests for such consideration as the Members associated with such Series by their unanimous votes shall determine, or (ii) as a transferee of a Member's Membership Interest or any portion thereof, subject to the terms and conditions of this Agreement. A Person who is either issued a Membership Interest for a Series or who receives by transfer a Membership Interest for a Series and who has received the unanimous vote of the Members associated with such Series pursuant to this Section 11.01 shall be admitted to the Company as a Member associated with such Series upon its execution of a counterpart to this Agreement and a counterpart to a Separate Series Agreement for such Series. If a Person is admitted to the Company as a Member associated with a Series, such Person shall also be admitted at the same time as a Member with respect to all other Series and shall have the same Percentage Interests in all Series.

(b)     Any Person receiving a Membership Interest in a Series pursuant to Section 10.01 that is not admitted as a Member associated with such Series pursuant to this Section 11.01 (whether by failing to receive a unanimous vote with respect to such admission, by failing to execute a counterpart to this Agreement and a counterpart to a Separate Series Agreement or otherwise) shall be deemed to be a mere assignee of a Membership Interest associated with such Series. Unless otherwise admitted to the Company as a Member pursuant to this Agreement, an assignee of a Membership Interest has no voting or other management rights with respect to the Company or any Series.

Section 11.02 - Retroactive Allocations:

No additional Members or assignees of Membership Interests shall be entitled to any retroactive allocation of the Company's income, gains, losses, deductions, credits or other items; provided that, subject to the restrictions of §706(d) of the Code, additional Members and assignees of Membership Interests shall be entitled to their respective shares of the Company's income, gains, losses, deductions, credits and other items arising under contracts entered into before the effective date of the issuance or transfer of Membership Interests to the extent that such income, gains, losses, deductions, credits and other items arise after such effective date. To the extent consistent with § 706(d) of the Code and Treasury Regulations promulgated thereunder, the Company's books may be closed at the time Membership Interests are issued or transferred (as though the Company's taxable year had ended) or the Company may credit to additional Members and assignees of Membership Interests pro rata allocations of the Company's income, gains, losses, deductions, credits and items for that portion of the Company's Fiscal Year after the effective date of the issuance or transfer of the Membership Interests.

**ARTICLE XII**
**TERMINATION OF SERIES;**
**DISSOLUTION AND TERMINATION OF THE COMPANY**

Section 12.01 - Dissolution of the Company:

(a)     The Company shall be dissolved upon the occurrence of either of the following events:

(i)     by the unanimous written agreement of all Members; or

(ii)     upon the entry of decree of judicial dissolution under Section 18-802 of the Act.

(b)     The death, retirement, resignation, expulsion, bankruptcy or dissolution of any Member or the occurrence of any event that terminates the continued membership of any Member in the Company shall not in and of itself cause a dissolution of the Company.

(c)     If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling his estate or administering his property. If a Member is an Entity and is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

Section 12.02 - Termination of a Series:

(a)     A Series shall be terminated upon the occurrence of any of the following events:

(i)      upon the dissolution of the Company;

(ii)     by the unanimous written agreement of all Members associated with such Series substantially in the form of Exhibit C attached hereto;

(iii)    at the time in which there are no Members associated with such Series; or

(iv)     upon the entry of a decree of judicial termination under Section 18-215 of the Act.

(b)      Other than in connection with a transfer of Membership Interests in accordance with this Agreement, a Member associated with a Series shall not take any voluntary action (including, without limitation, resignation) that directly causes it to cease to be a Member of the Company associated with such Series. Unless otherwise approved by Members associated with a Series owning a Majority Interest of such Series, a Member who ceases to be a Member associated with such Series (a "Resigning Member"), regardless of whether such termination was the result of a voluntary act by such Member, shall not be entitled to receive any distributions from the Company with respect to such Series in excess of those distributions to which such Member would have been entitled had such Member remained a Member associated with such Series. Except as otherwise expressly provided herein, a Resigning Member shall immediately become an assignee associated with such Series. Damages for breach of this Section 12.02(b) shall be monetary damages only (and not specific performance), and such damages may be offset against distributions by the Company with respect to such Series to which the Resigning Member would otherwise be entitled.

(c)      The termination and winding up of a Series shall not cause a dissolution of the Company (even if there are no remaining Series) or the termination of any other Series. The termination of a Series shall not affect the limitation on liabilities of such Series or any other Series provided by this Agreement and the Act.

Section 12.03 - Winding Up, Liquidation and Distribution of Assets of a Series Upon Termination of Such Series:

(a)      Upon termination of a Series, an accounting shall be made of the accounts of the Company with respect to such Series and of the assets, liabilities and operations associated with such Series, from the date of the last previous accounting until the date of such termination. The Members associated with such Series shall immediately proceed to wind up the affairs of such Series.

(b)      If a Series is terminated and its affairs are to be wound up, the Members associated with such Series shall:

(i)      Sell or otherwise liquidate all of the assets of such Series as promptly as practicable (except to the extent such Members may determine to distribute any assets to the Members in kind);

(ii)    Allocate any Profits or Losses resulting from such sales to the respective Capital Accounts of the Members associated with such Series in accordance with Article IX hereof;

(iii)    Satisfy (whether by payment or reasonable provision for payment thereof) all liabilities of the Company with respect to such Series, including liabilities to Members who are creditors, to the extent otherwise permitted by law, other than liabilities to Members for distributions (for purposes of determining the Capital Accounts of the Members associated with such Series, the amounts of any Reserves created in connection with the liquidation of such Series shall be deemed to be an expense of the Company with respect to such Series); and

(iv)    Distribute the remaining assets of such Series to the Members associated with such Series in accordance with their Capital Account balances after giving effect to all contributions, distributions, and allocations for all periods.

(c)    Notwithstanding anything to the contrary in this Agreement, if upon the termination and liquidation of any Series, any Member associated with such Series has a deficit balance in its Capital Account associated with such Series (after giving effect to all contributions, distributions, allocations and other Capital Account adjustments for all taxable years, including the year during which such termination and liquidation occurs), such Member shall have no obligation to make any Capital Contribution, or otherwise restore the deficit balance in such Members' Capital Account associated with such Series, and such deficit Capital Account balance shall not be considered a debt owed by such Member to the Company with respect to such Series or otherwise, to any other Member or to any other Person for any purpose whatsoever.

(d)    The Members associated with a Series shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company with respect to such Series and the final distribution of its assets.

## Section 12.04 - Winding Up. Liquidation and Distribution of Assets of the Company Upon Dissolution of the Company:

Upon the dissolution of the Company pursuant to Section 12.01, the Company shall be wound up by winding up each Series in the manner contemplated by Section 12.03, except that, for purposes of Section 12.03(b)(iv), the separate Capital Accounts of each Member associated with more than one Series shall be combined into a single Capital Account of such Member.

## Section 12.05 - Certificate of Cancellation:

If a dissolution of the Company occurs and all debts, liabilities and obligations of the Company, whether or not associated with any Series, have been satisfied (whether by payment or reasonable provision for payment) and all of the remaining property and assets of the Company, whether or not associated with any Series, have been distributed, a certificate of cancellation as required by the Act shall be jointly executed and filed by the members of the Company, as

733790.1                     24

authorized persons, within the meaning of the Act, with the Secretary of State of the State of Delaware.

Section 12.06 - Effect of Filing Certificate of Cancellation:

Upon the filing of a certificate of cancellation with the Secretary of State of the State of Delaware, pursuant to Section 12.05, the existence of the Company shall cease.

Section 12.07 - Returns of Contributions Nonrecourse to Other Members:

Except as otherwise provided by applicable laws, upon termination of a Series, each Member associated with such Series shall look solely to the assets of such Series for the return of its Capital Contributions made with respect to such Series, and if the assets of such Series remaining after payment of or due provision for the debts and liabilities of the Company with respect to such Series are insufficient to return such Capital Contributions, such Members shall have no recourse against any other Series, the Company or any other Member, except as otherwise provided by law.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

Section 13.01 - Notices:

All notices provided for by this Agreement shall be made in writing and deemed received (i) upon the actual delivery of the notice into the hands of the party entitled thereto, or (ii) upon the mailing of the notice in the U.S. mail at the last known address of the party entitled thereto, certified mail, return receipt requested.

Section 13.02 - Binding Effect:

This Agreement is binding upon and inures to the benefit of the Members, and, to the extent permitted by this Agreement, their respective legal representatives, successors and assigns.

Section 13.03 - Remedies for Breach:

The Membership Interests are unique chattels, and each party to this Agreement shall have the remedies that are available to it for the violation of any of the terms of this Agreement, including, but not limited to, the equitable remedy of specific performance (except as otherwise provided by this Agreement).

Section 13.04 - Governing Law:

This Agreement, and the rights of the parties hereunder, shall be construed pursuant to the laws of the State of Delaware (without regard to conflict of laws principles).

Section 13.05 - Waiver of Action for Partition:

Each Member irrevocably waives during the term of the Company any right that it may have to maintain any action for partition with respect to the property of the Company or any Series.

Section 13.06 - Amendments:

This Agreement may not be amended except in writing by a class vote comprised of the affirmative vote of Members associated with each Series holding at least two-thirds of all Percentage Interests in each Series. Any amendment changing the Percentage Interest needed under this Section 13.06 to amend this Agreement requires the unanimous vote of the Members.

Section 13.07 - Execution of Additional Instruments:

Each Member hereby agrees to execute such other and further statements of interest and holdings, designations and other instruments necessary to comply with any laws, rules or regulations.

Section 13.08 - Construction:

Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

Section 13.09 - Waivers:

The failure of any party hereto to seek redress for default of or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act, which would have originally constituted a default, from having the effect of an original default.

Section 13.10 - Rights and Remedies Cumulative:

The rights and remedies provided by this Agreement are cumulative, and the use of any right or remedy by any party hereto shall not preclude or waive the right to use any other remedy. Said rights and remedies are given in addition to any other legal rights the parties hereto may have.

Section 13.11 - Severability:

If any provision or term of this Agreement is found to be invalid, void or unenforceable, the remainder of the provisions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated. It is the intent of the parties hereto for the terms and conditions of this Agreement to be interpreted to the greatest extent possible so as to remain valid and enforceable, and any provision or term of this Agreement found by a court to be invalid, void or unenforceable, shall be rewritten by the court pursuant to this intent.

Section 13.12 - Creditors:

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of (i) the Company, (ii) any Series of the Company, or (iii) any Member.

Section 13.13 - Counterparts:

This Agreement may be signed in multiple counterparts, all of which should be deemed an original and shall constitute one instrument.

Section 13.14 - Integration:

This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

Section 13.15 - Representation:

The law firm of Downey Brand LLP has represented the Company in connection with its formation and this Agreement, and no Member, though such firm has represented or does represent one or more Members individually in connection with other matters.  Each Member has obtained counsel or decided the Member does not need counsel in connection with this Agreement and the formation of the Company.  Each Member acknowledges that Downey Brand served as counsel for certain of the Members, but is not serving or representing the interest of the individual Members in connection with the formation of the Company or in connection with this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below as of the day and year first above written.

MEMBERS:

Larry Harmon & Associates, P.A.,
a California professional corporation

By: _____
    Larry Harmon, President

KC Development Company, LLC,
a California LLC

By: _____
    Kenny Cruz, Managing Member

733790.1

**EXHIBIT A**

| Member | Capital Contribution | Percentage Interest |
|---|---|---|
| Larry Harmon & Associates, P.A.<br>2209 Plaza Drive, Suite 100<br>Rocklin, CA  95765 | | 50% |
| KC Development Company, LLC<br>312 Winged Foot<br>Granite Bay, CA  95746 | | 50% |
| | | |
| | | |
| **Total** | | **100.00%** |